JS 44 (Rev. 07/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Liza Weiser and Scott Weiser, as adm. & per. rep of the Estate of David Weiser; and in their ind. capacities

## DEFENDANTS
Elizabethtown Area School District, Michele Balliet, Monica Steward, George Longridge, Nathan Frank, Michelle Heckman, Mary Roush, and John/Jane Doe #1-10 School District Employees/Officials

**(b)** County of Residence of First Listed Plaintiff: **Lancaster**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: **Lancaster**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
J. Dwight Yoder
Gibbel Kraybill & Hess LLP, 2933 Lititz Pike, P.O. Box 5349
Lancaster, PA 17606, 717-291-1700

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☒ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA, RA, IDEA, and 42 U.S.C. Sec. 1983

Brief description of cause:
Violation of civil rights of public school student

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____ DOCKET NUMBER _____

DATE: 2/8/17
SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

LIZA WEISER and SCOTT WEISER, as administrators : CIVIL ACTION
and personal representatives of the ESTATE OF :
DAVID WEISER, and in their individual capacities :
　　　　　　　　　　vs. :
ELIZABETHTOWN AREA SCHOOL DISTRICT; MICHELE : NO.
BALLIET; MONICA STEWARD; GEORGE LONGRIDGE; NATHAN :
FRANK; MICHELLE HECKMAN; MARY ROUSH; and JOHN/JANE
DOE #1-10 SCHOOL DISTRICT EMPLOYEES/OFFICIALS

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.　　　　( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
　　and Human Services denying plaintiff Social Security Benefits.　　　　( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.　( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
　　exposure to asbestos.　　　　( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
　　commonly referred to as complex and that need special or intense management by
　　the court. (See reverse side of this form for a detailed explanation of special
　　management cases.)　　　　( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.　(X)

_2/8/17_　　　　_[signature]_　　　　_Plaintiff_
**Date**　　　　**Attorney-at-law**　　　　**Attorney for**

_717-291-1700_　　　　_717-291-5547_　　　　_dyoder@gkh.com_
**Telephone**　　　　**FAX Number**　　　　**E-Mail Address**

(Civ. 660) 10/02

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a)   The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)   In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)   The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)   Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)   Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

17547 (Scott)

Address of Plaintiff: 223 East High St., Elizabethtown, PA 17022 (Liza); 502 E. Front St., Marietta PA

Address of Defendant: 600 E. High St., Elizabethtown, PA 17022 (Distrct, Balliet, Steward, Longridge, Frank, and Heckman); 511 E. High St., Elizabethtown, PA (Roush)

Place of Accident, Incident or Transaction: Intersection of East High Street and Chestnut Street, Elizabethtown, PA
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes☐   No☒

Does this case involve multidistrict litigation possibilities?    Yes☐   No☒

RELATED CASE, IF ANY:
Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐   No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐   No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, J. Dwight Yoder , counsel of record do hereby certify:
☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: 2/8/17   _J. Dwight Yoder_   81985
              Attorney-at-Law         Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 2/8/17   _J. Dwight Yoder_   81985
              Attorney-at-Law         Attorney I.D.#

CIV. 609 (5/2012)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LIZA WEISER and SCOTT WEISER, as administrators and personal representatives of the ESTATE OF DAVID WEISER and in their individual capacities,<br>    Plaintiffs<br><br>                v.<br><br>ELIZABETHTOWN AREA SCHOOL DISTRICT; MICHELE BALLIET; MONICA STEWARD; GEORGE LONGRIDGE; NATHAN FRANK; MICHELLE HECKMAN; MARY ROUSH; and JOHN / JANE DOE # 1-10 SCHOOL DISTRICT EMPLOYEES / OFFICIALS,<br>    Defendants | CIVIL ACTION<br><br><br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

## **COMPLAINT**

### I.   INTRODUCTION

1. This claim involves the tragic and unnecessary death of David Weiser ("David"), a thirteen year-old child with autism, who was struck by a car and killed while attempting to cross East High Street on his way home from Elizabethtown Area Middle School in Lancaster, Pennsylvania on March 9, 2015. Elizabethtown Area School District and certain School District employees knew that David was autistic, that he specifically required assistance and support in unstructured environments, and that he was unable to comprehend and process situations that involved making decisions based upon multiple environmental inputs. Over the course of many years, the District Defendants knew that East High Street was a very busy and dangerous road, one that a student with autism, such as David, could not safely cross without assistance. In complete disregard of the obvious and known safety risks associated with David trying to navigate and cross East High Street, the District Defendants unilaterally designated David as a

"walker" and required him to walk to and from school every day without assistance or support. Because David lived on the opposite side of East High Street across from the school, David had to cross this road twice a day. David was tragically killed when Defendant Roush's car struck him as he was attempting to cross East High Street on his way home from school. Plaintiffs file this action under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), the Individuals with Disabilities Education Act ("IDEA") and 42 U.S.C. § 1983 for violating David's civil rights and Plaintiffs' civil rights. Plaintiffs also assert supplemental state law claims against Defendant Roush.

## II.   JURISDICTION AND VENUE

2.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, and pursuant to 28 U.S.C. § 1343(a)(3) because this action seeks to redress the deprivation, under color of state law, of Plaintiffs' constitutional rights.

3.   Venue is proper under 28 U.S.C. § 1391(b) because all Defendants reside in this district, and because the events and omissions giving rise to Plaintiffs' claims occurred in this district.

## III.   PARTIES

4.   Plaintiff Liza Weiser is an adult individual who resides at 223 East High Street, Elizabethtown, PA 17022 ("Mrs. Weiser"). Mrs. Weiser is the mother of David and brings this claim both in her capacity as an administrator and personal representative of the Estate of David Weiser ("the Estate") and also in her own individual capacity for the deprivation of her fundamental constitutional rights arising out of David's death.

2

5. Plaintiff Scott Weiser is an adult individual who resides at 502 East Front Street, Marietta, PA 17547 ("Mr. Weiser"). Mr. Weiser is the father of David and brings this claim both in his capacity as an administrator and personal representative of the Estate and also in his own individual capacity for the deprivation of his fundamental constitutional rights arising out of David's death.

6. Defendant Elizabethtown Area School District ("District") is a public school district within the Commonwealth of Pennsylvania, with a business address of 600 East High Street, Elizabethtown, PA 17022.

7. Defendant Michele Balliet was the Superintendent for the District at the time of David's death. Defendant Balliet committed and/or permitted the acts and omissions alleged in this Complaint. She is being sued in her official and individual capacities. The address for Defendant Balliet is Elizabethtown Area School District, 600 East High Street, Elizabethtown, PA 17022.

8. Defendant Monica Steward was the Supervisor of Special Education for the District at the time of David's death. Defendant Steward committed and/or permitted the acts and omissions alleged in this Complaint. She is being sued in her official and individual capacities. The last known address for Defendant Steward is Elizabethtown Area School District, 600 East High Street, Elizabethtown, PA 17022.

9. Defendant George Longridge was the Business Manager in charge of transportation for the District at the time of David's death. Defendant Longridge committed and/or permitted the acts and omissions alleged in this Complaint. He is being sued in his official and individual capacities. The last known address for Defendant Longridge is Elizabethtown Area School District, 600 East High Street, Elizabethtown, PA 17022.

10. Defendant Nathan Frank was the Principal for Elizabethtown Area Middle School at the time of David's death. Defendant Frank committed and/or permitted the acts and omissions alleged in this Complaint. He is being sued in his official and individual capacities. The last known address for Defendant Frank is Elizabethtown Area School District, 600 East High Street, Elizabethtown, PA 17022.

11. Defendant Michelle Heckman was the special education teacher responsible for overseeing and developing the Individualized Education Program ("IEP") for David at the time of his death. Defendant Heckman committed and/or permitted the acts and omissions alleged in this Complaint. She is being sued in her official and individual capacities. The last known address for Defendant Heckman is Elizabethtown Area School District, 600 East High Street, Elizabethtown, PA 17022.

12. Defendants John / Jane Doe # 1-10 school district employees / officials were unknown employees or officials of the District, including administrators, teachers, specialists and school board members, who were involved with David's education at the District and committed the acts and omissions alleged in this Complaint. They are being sued in their individual capacities. It is believed their individual identities will be determined through discovery at which time their individual names will be substituted in the caption.

13. Defendant Mary Roush is an adult individual who was driving the car that struck David. The last known address for Defendant Roush is 511 East High Street, Elizabethtown, PA 17022. Defendant Roush is being sued in her individual capacity.

14. At all times relevant, the District and Defendants Balliet, Steward, Longridge, Frank, Heckman and the John / Jane Doe Defendants ("the District Defendants") acted under the color of state law and within the course and scope of their employment.

## IV.    FACTUAL ALLEGATIONS

15.    Paragraphs 1 through 14 are incorporated herein by reference.

16.    David was born on September 26, 2001.

17.    At an early age, it became apparent that David had a disability.

18.    At eleven months, David was diagnosed with Autism Spectrum Disorder.

19.    At the age of two, David was experiencing severe problems in social, language, motor and cognitive skills and was found eligible for early intervention services due to developmental delays in these areas.

20.    When David turned three, he began receiving preschool special education programs and services for children with Autism Spectrum Disorder.

21.    Soon after receiving special education programs, David was identified as a student with a learning disability pursuant to the Individuals with Disabilities Education Act ("IDEA"), and an IEP was implemented accordingly.

22.    David attended kindergarten through sixth grade in the Upper Perkiomen School District, in Montgomery County, Pennsylvania ("Upper Perkiomen").

23.    David's diagnoses included Autism Spectrum Disorder, sensory integration dysfunction, speech disturbance, and Attention Deficit Hyperactivity Disorder ("ADHD").

24.    He received special education services throughout the seven years he attended school in Upper Perkiomen.

25.    For example, David would spend half of his day or more in a learning support classroom, outside of the regular education classroom.

26.    He had teacher-aide support throughout his school day to monitor his behavior and facilitate attention to instruction and on-task behavior.

27.     Because of his disability, David also received speech/language services and occupational therapy.

28.     Teachers observed that David was easily distracted, needing frequent prompts to stay focused and requiring a high degree of structure to organize his day.

29.     David also often became over-stimulated in large-group settings.

30.     Upper Perkiomen provided David with transportation, specifically, a school bus to and from school.

31.     During the summer of 2014, after David completed sixth grade at Upper Perkiomen, David's family moved from Montgomery County to 223 East High Street, Elizabethtown (Lancaster County), Pennsylvania.

32.     The family's new residence was located within the Elizabethtown Area School District.

33.     In August of 2014, David was enrolled in Elizabethtown Area Middle School ("Middle School") as a seventh-grade student.

34.     Before the start of the 2014-2015 school year, the District Defendants received David's school records from Upper Perkiomen. The records included his evaluations, IEPs and medical records / diagnoses.

35.     By the start of the 2014-2015 school year, or shortly thereafter, the District Defendants reviewed and were familiar with David's school records.

36.     Based on David's school records, the District Defendants knew, *inter alia*, that David was a student with autism and ADHD; he had learning, behavioral, emotional and cognitive challenges; Upper Perkiomen had provided an aide to support him on a daily basis; and

6

he had consistently been provided with transportation services between home and school throughout his educational history.

37. David's records reflected that he had challenges similar to other children with Autism Spectrum Disorder, including repetitive, stereotypic and rigid behaviors; developmental delays in cognition, language, gestures and movement; and impaired executive functioning and sensory integration deficits.

38. David's records further documented and established that he had difficulty with working memory and trouble conceptualizing and manipulating multiple pieces of information and expectations at the same time. He also had difficulty maintaining attention, focus and concentration and regulating and controlling his impulses.

39. The District Defendants are required to provide students with a safe means to travel to and from their home and school as part of a free and appropriate public education ("FAPE") and under Pennsylvania law.

40. The Middle School is located at 600 East High Street, Elizabethtown, PA 17022.

41. East High Street is a state road owned and maintained by the Pennsylvania Department of Transportation.

42. David's family lived at 223 East High Street, about one-half mile west of the Middle School and on the opposite side of East High Street from the Middle School.

43. Before the start of the school year, the District informed David's family that the District had designated David as a "walker," without any consultation with David's parents, and that David would have to walk to and from the Middle School on his own, without any assistance or support from the District.

44. Therefore, in order to get to and from school, David had to walk along and cross East High Street.

45. The District did not direct David to follow a particular walking route to and from school and never provided any instructions or directions related to a walking route.

46. East High Street is well known by school and municipal officials to be a heavily trafficked state road with a long history of excessive speeding, traffic citations and accidents.

47. From 2005 through 2015, approximately two hundred (200) crashes and related incidents occurred along East High Street, some that resulted in injuries and at least one involving another fatality.

48. From 2005 through 2015, over seven hundred citations were issued by the Elizabethtown Borough Police Department to motorists traveling along East High Street for speeding and moving violations.

49. For many years prior to David's death, residents and parents lodged numerous complaints with the District and with Elizabethtown Borough regarding the dangerous condition of the roadways surrounding the District's High School, Middle School and an elementary school, all of which are located on the south side of East High Street.

50. Residents cited specific concerns for pedestrian safety, particularly for District students who had to walk to and from school.

51. Parents complained to members of the School Board and to administration that the route their children had to walk to school was dangerous and asked the District to provide bus transportation to and from school.

52. At the time of David's enrollment in the District, the District Defendants were well aware of the dangerous nature of East High Street as well as the unsafe conditions of a number of other roads surrounding the Middle School.

53. Because of the dangerous nature of East High Street, the District had placed crossing guards at an elementary school along East High Street that is located east of the Middle School.

54. There was no crossing guard, however, between the Middle School and David's home to help students cross East High Street.

55. David and other Middle School students who lived west of the Middle School and on the opposite (north) side of High Street from the Middle School were forced, on their own and without any assistance from the District, to navigate a clearly hazardous and dangerous route every day.

56. In order to safely walk along and across public roads that have vehicular traffic, a person must have strong attention processes, cannot be easily distracted, and must have the cognitive ability to process complex situations involving simultaneous multiple external stimuli (such as traffic moving in both directions, traffic turning, other pedestrians, loud noises, etc.).

57. Pedestrians crossing heavily traveled roads, even those equipped with appropriate traffic control devices, must be focused, pay close attention to many details, and be able to make quick decisions in a fast paced, uncontrolled setting that involves significant risk.

58. David, as a student with autism and ADHD, did not have the necessary cognitive processes and perceptual motor abilities to walk independently to and from school, regardless if the walking route was otherwise considered "safe" for students without a disability.

59. Indeed, because of his autism and ADHD, David had required an aide and other special assistance within the school and classroom setting simply to keep him on task and focused in a controlled environment.

60. The District Defendants knew that David, who needed special assistance simply to stay on task in school, could not safely walk home from the Middle School to his house every day.

61. The District Defendants knew David had rights under federal law to a free and appropriate public education and to protection, services and accommodations for his disabilities as part of his education.

62. The District Defendants knew that federal and state law required that the District provide David with safe and appropriate transportation to and from school.

63. The District Defendants knew that David had a fundamental right to the enjoyment of his life, to bodily integrity and to be free from pain and suffering.

64. The District Defendants repeatedly disregarded an excessive and known risk to David's rights and to his safety by requiring him to walk to and from school, which involved crossing East High Street—a road the District Defendants knew was dangerous.

65. The District Defendants knew, or recklessly disregarded, the fact that requiring David to walk to and from school every day on a route that forced him to cross East High Street was substantially likely to result in the violation of his federal and constitutional rights, and ultimately it resulted in the deprivation of the most fundamental right of all – his life.

66. The District Defendants failed to follow the District's own transportation policy, which requires that "The District will transport students with disabilities identified to need

transportation without regard to distance or hazardous walking conditions as required by State and federal law."

67. Instead, the District Defendants followed what is believed to be a well established custom and practice pursuant to which all students residing within a certain distance of the school were required to walk to and from school as a matter of course and without any evaluation as to the appropriateness of such a requirement (as part of the IEP review process or otherwise) for students, such as David, who could not walk safely to school because of his autism and ADHD.

68. It is believed and therefore averred that the District treated students with certain cognitive and behavioral disabilities differently as it related to transportation services from students with physical disabilities by requiring students with cognitive disabilities to walk to and from school while providing special transportation to students with certain physical disabilities.

69. It is believed and therefore averred that the District Defendants followed this custom and practice to avoid the extra cost associated with providing transportation for students, such as David.

70. The District Defendants knew because of David's autism and ADHD that there was an excessive risk to David if he was required to be a walker, but the District Defendants failed to act despite that knowledge.

71. The District Defendants knew that requiring students to cross East High Street without a crossing guard or other traffic control device was unsafe and dangerous.

72. The District Defendants consciously disregarded as part of David's IEP the known risk of requiring David to walk to and from school, particularly when it required crossing a state road that was known to be dangerous.

73. The District Defendants never provided any direction, support or training to David or his parents regarding walking to and from school by himself.

74. Between the start of school in late August of 2014 and David's death in March of 2015, the District Defendants had months to address the very foreseeable harm arising out of the District requiring David to walk to and from school.

75. For over six months, the District Defendants failed to act and, instead, consciously disregarded a great risk of harm to David.

76. David's older sister, C.W., attended the High School, which is directly to the east of the Middle School.

77. David and C.W. normally walked to school together and often walked home together as long as C.W. did not have to stay later at the High School for extracurricular activities.

78. C.W. would help David navigate crossing East High Street and generally be sure that he was safe as he walked to and from school.

79. On March 9, 2015, C.W. was unable to walk home with David.

80. David proceeded to walk home by himself after school was dismissed.

81. David walked west along East High Street, eventually approaching the intersection of East High Street and Chestnut Street.

82. At the intersection of East High Street and Chestnut Street, there are stop signs on Chestnut Street but not on East High Street.

83. As he approached the intersection, David attempted to cross East High Street.

84. Defendant Roush, who was traveling southbound on North Chestnut Street and had stopped at the stop sign at East High Street, made a left turn onto East High Street, intending to proceed in an easterly direction.

85. Defendant Roush failed to yield to David, and her vehicle struck David, dragging his body for several feet, causing severe injuries and pain and suffering to David.

86. David was later pronounced dead at the scene of the accident.

87. David was an integral and important part of his family.

88. Mr. and Mrs. Weiser as well as David's sister and brothers were devastated and emotionally distraught by his death, and the family continues to struggle with his death and the circumstances under which it occurred.

89. As a result of David's death, Mrs. Weiser suffered and continues to suffer severe panic attacks and depression. C.W. has been particularly distraught by David's death because she was unable to walk home with him on the day of his death.

90. As a result of David's death, Mrs. Weiser was unable to maintain her employment and had to resign from her job due to her emotional and mental state.

91. As a result of David's death, Plaintiffs incurred and therefore seek damages for all hospital, medical, funeral, burial and estate administration expenses, pain and suffering, as well as contributions David would have made during his lifetime and for any and all other losses and damages allowable by law, including lost wages, loss of consortium, comfort, society and companionship.

92. Liza and Scott Weiser bring this action as administrators and personal representatives of the Estate of David Weiser under both federal and state law, including claims

under Pennsylvania's Wrongful Death Statute, 42 Pa. C.S.A. § 8301, and Survival Act, 42 Pa. C.S.A. § 8302.

93.     Liza and Scott Weiser also bring this action in their individual capacities for damages arising out of the deprivation and loss of their liberty interests in preserving the life and safety of David and the recognized interest in the companionship, society, custody and integrity of the family of which David was such an important part.

V.     CLAIMS FOR RELIEF

**COUNT I**
**Violation of the ADA and RA**

**(Liza and Scott Weiser, as administrators and personal representatives
of the Estate of David Weiser v. Elizabethtown Area School District)**

94.     Paragraphs 1 through 93 are incorporated herein by reference.

95.     David had been diagnosed with Autism Spectrum Disorder, sensory integration dysfunction, speech disturbance, and ADHD, all of which were recorded in David's education records and were known to the District.

96.     David's impairments substantially limited one or more major life activities, for example, learning, thinking, concentrating, communicating, and caring for himself.

97.     The District is a public entity subject to the Americans with Disabilities Act ("ADA").

98.     The District receives federal funding and, therefore, must also comply with the Rehabilitation Act ("RA").

99.     A school district is prohibited from discriminating against a disabled student by depriving the student of a FAPE.