IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LIZA WEISER and SCOTT WEISER, as administrators and personal representatives of the ESTATE OF DAVID WEISER and in their individual capacities,<br><br>                Plaintiffs,<br><br>     v.<br><br>ELIZABETHTOWN AREA SCHOOL DISTRICT, MICHELE BALLIET, MONICA STEWARD, GEORGE LONGRIDGE, NATHAN FRANK, MICHELLE HECKMAN, MARY ROUSH, and JOHN/JANE DOE # 1-10 SCHOOL DISTRICT EMPLOYEES/OFFICIALS,<br><br>                Defendants. | CIVIL ACTION<br>NO. 17-625 |

## MEMORANDUM OPINION

**Schmehl, J.** /s/ JLS                                                    February 27, 2018

        Before the Court is the Motion to Dismiss Plaintiffs' Amended Complaint of Elizabethtown Area School District, Michele Balliet, Monica Steward, George Longridge, Nathan Frank, and Michelle Heckman ("District Defendants"), as well as the District Defendants' Motion to Dismiss the Crossclaim of co-defendant Roush and their Motion to Dismiss the Amended Crossclaim of Roush. Plaintiffs bring this action following the tragic death of their son David, a seventh-grade student, who was struck and killed by a car driven by co-defendant Mary Roush while David was walking home from Elizabethtown Area Middle School on March 9, 2015. Plaintiffs' Amended Complaint sets forth claims for violations of the Americans with Disabilities Act and the

Rehabilitation Act and violations of David's constitutional rights pursuant to 42 U.S.C. § 1983 against the District Defendants.[1]

Plaintiffs filed their Complaint on February 10, 2017, and in response to the District Defendants' motion to dismiss, filed an Amended Complaint on May 5, 2017. In response to the Amended Complaint, the District Defendants filed another Motion to Dismiss on June 1, 2017.

I. **STATEMENT OF FACTS**

David and his family moved into the school district during the summer of 2014. (Am. Compl. ¶ 31.) In August of 2014, David was enrolled as a seventh-grade student in the Middle School. (*Id.*, ¶ 33.) Before the start of the school year, the District Defendants received David's school records from his prior school district. (*Id.*, ¶ 34.) David's records included IEPs and related evaluations and medical records which addressed David's needs and services received as a special education student pursuant to the IDEA. (*Id.*, ¶¶ 21, 34.) These records reflect that David's medical diagnoses included autism and Attention Deficit Hyperactivity Disorder. (*Id.*, ¶¶ 23, 37.)

Based upon the location of Plaintiffs' residence (approximately one-half mile west of the Middle School), the District Defendants assigned David to be a "walker" without addressing with Plaintiffs the potential need for transportation due to David's disability. (*Id.*, ¶¶ 43-44.) David's IEP with the school district for the 2014-2015 school year did not include any services to assist him with transportation to and from the Middle School. (*Id.*, ¶¶ 83-84.)

---

[1] Plaintiffs' Amended Complaint also contains supplemental state law claims directed to co-Defendant Roush that are not the subject of the instant motion.

David's sister attended Elizabethtown Area High School, which is adjacent to the Middle School. (Am. Compl., ¶ 87.) David and his sister "normally" walked to school together in the morning, and "often" walked home together in the afternoon. (*Id.*, ¶ 88.) To get from his home to the Middle School and vice versa, David had to cross East High Street. (*Id.*, ¶ 50.) A school crossing guard was located east of the Middle School to help students cross East High Street, but there were no crossing guards located to the west of the Middle School on David's route home; it would have been out of David's way to utilize the crossing guard on the east side of the Middle School. (*Id.*, ¶¶ 61-62.)

On March 9, 2015, David's sister was unable to walk home with him, and after dismissal, David began to walk home on his own. (*Id.*, ¶¶ 90-91.) While attempting to cross East High Street as he neared the intersection with Chestnut Street, David was struck and killed by a vehicle driven by co-defendant Roush. (*Id.*, ¶¶ 92-97.)

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss requires the court to examine the sufficiency of the complaint. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957) (abrogated in other respects by *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than

conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679); *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011); *Malleus v. George*, 641 F.3d 560, 563 (3d. Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d. Cir. 2010).

### III. <u>MOTION TO DISMISS AMENDED COMPLAINT</u>

#### A. ADA/Rehabilitation Act Claims

Count I of the Amended Complaint against the school district seeks compensatory damages for the school district's alleged violations of the ADA and the Rehabilitation Act. Specifically, Count I alleges that the school district discriminated against David by not providing him with transportation services on account of his disabilities. (Am. Compl., ¶¶ 105-123.) Defendants argue that that Count I of Plaintiffs' Amended Complaint should be dismissed because Plaintiffs' ADA and Section 504 claims are time-barred, and because Plaintiffs have failed to exhaust their administrative remedies in this matter. I find Defendants' arguments to be unpersuasive and will deny their motion to dismiss Count I of the Amended Complaint.

##### 1. Statute of Limitations

Defendants argue that Count I of Plaintiffs' Amended Complaint should be dismissed because "the allegations of fact make it clear that the ADA and Section 504 claims are time-barred." (Defs' Brief, p. 7.) As there is no statute of limitations contained in either the ADA or the Rehabilitation Act, courts apply the statute of limitations for the

most analogous state law cause of action, which in Pennsylvania is the two-year statute of limitations for personal injury actions. *See Disabled in Action of Pennsylvania v. Southeastern Pennsylvania Transportation Authority*, 539 F.3d 199, 208 (3d Cir. 2008) ("the statute of limitations applicable to claims under Title II of the ADA and Section 504 of the RA is . . . a two-year statute of limitations.")

According to the Amended Complaint, the Weisers moved into the School District during the summer of 2014, and David was enrolled in the Middle School in August of 2014. Prior to the start of the 2014-15 school year, the School District received records from David's prior school reflecting that he had been identified as a special education student with certain needs and services under the IDEA. (Am. Compl., ¶¶ 31, 33-35.) Before the start of the school year, the School District designated David to be a "walker," resulting in David walking to and from the Middle School on his own. (Am. Compl., ¶ 44.) David was killed on March 9, 2015, while walking home from school.

Defendants argue that Plaintiffs "knew or should have known" that the School District should have been providing David with transportation but was not in August of 2014, when David enrolled in the Middle School and was designated a walker. According to Defendants, based upon these facts as contained in the Amended Complaint, any cause of action under the ADA or Section 504 of the Rehabilitation Act accrued in August of 2014 or shortly thereafter, not the date of David's accident in March of 2015. Based upon Defendants' timeline, Plaintiffs' action under the ADA and Section 504 should have been filed by August of 2016 to meet the two-year statute of limitations, but was not filed until February of 2017 and is therefore time-barred.

Plaintiffs argue that the statute of limitations began to run on the date of David's death, not the date when they allegedly became aware of the School District's denial of transportation to David, and therefore, their complaint, filed in February of 2017, was timely. At this stage of the proceedings, construing the Amended Complaint in a light most favorable to Plaintiffs, as I am required to do, it is not clear when Plaintiffs "knew or should have known" that a cause of action was accruing based upon the School District designating David a walker in August of 2014. There are clearly factual issues that must be determined before it can be said with absolute certainty that Plaintiffs should have known as of a certain date that they had a potential cause of action against the school district. Therefore, I cannot grant Defendants' Motion at this stage of the case based upon the statute of limitations because I cannot say definitely when Plaintiffs' cause of action accrued.

2. **Exhaustion**

Next, Defendants argue that Plaintiffs had an opportunity under the IDEA to raise concerns with the school district regarding David walking to and from school, and did not do so, thereby failing to exhaust their administrative remedies and being barred from prosecuting their violations of the ADA and the Rehab Act. Plaintiffs argue that due to David's death, their failure to exhaust should be excused as futile.

The IDEA offers federal funds for the education of special education students in exchange for a commitment by state and local education agencies to provide a free and appropriate public education to special education students. If a parent wants to challenge the special education services being provided to their child under the IDEA, they can request a due process hearing by submitting a due process complaint to the school district

and the state education agency. 20 U.S.C. §§ 1412-1415. Section 1415(l) of the IDEA requires exhaustion of administrative remedies under the IDEA before parents can file a federal lawsuit for non-IDEA claims seeking relief that is available under the IDEA:

> Nothing in this title shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, Title V of the Rehabilitation Act of 1973 or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this part, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this part.

20 U.S.C. §1415(l). The United States Supreme Court recently explained section 1415(l) in *Fry v. Napoleon Community Schools*, 137 S.Ct. 743 (2017). It stated:

> Section 1415(l)'s exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a free appropriate public education. If a lawsuit charges such a denial, the plaintiff cannot escape §1415(l) merely by bringing her suit under a statute other than the IDEA – as when, for example, the plaintiffs in *Smith* claimed that a school's failure to provide a FAPE also violated the Rehabilitation Act. Rather, that plaintiff must first submit her case to an IDEA hearing officer, experienced in addressing exactly the issues she raises. But if, in a suit brought under a different statute, the remedy sought is not for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required.

*Fry*, 137 S.Ct. at 754. They further stated that whether a non-IDEA claim seeks relief available under the IDEA for the denial of FAPE, and thus must be exhausted, depends upon the "gravamen" of the claim. *Id.* "What matters is the crux-or, in legal-speak, the gravamen-of plaintiff's complaint, setting aside any attempts at artful pleading." *Id.*

Defendants argue that Count I of Plaintiffs' Amended Complaint, alleging a violation of the ADA and the Rehabilitation Act due to a lack of transportation services for David, is "based squarely upon the District Defendant's alleged denied of FAPE to David." (Defs' Brief, p. 13.) In making this argument, Defendants rely on paragraph 40

7

of Plaintiffs' Amended Complaint, which states: "The District Defendants are required to provide students with a safe means to travel to and from their home and school as part of a federally-mandated free and appropriate public education ("FAPE") and under Pennsylvania law." (*Id.*, *citing* Am. Compl., ¶ 40.) Defendants argue that Plaintiffs cannot file a claim under the ADA and the Rehabilitation Act complaining about a lack of transportation for David because they could have sought this relief under the IDEA and failed to do so; accordingly, Plaintiffs' claim is unexhausted and barred. In response, Plaintiffs argue that Count I of their Amended Complaint should not be barred because exhaustion under the IDEA would be futile due to David's death.

I am unpersuaded by Defendants' exhaustion argument. Defendants are correct that 20 U.S.C. § 1415(l) requires a plaintiff to exhaust all administrative remedies before suing in federal court under the IDEA. However, in certain narrow circumstances, exhaustion is waived where futile. Defendants recognize that the futility exception exists, but claim that the Third Circuit has "noted that the futility exception has been applied only where there were prior IDEA administrative proceedings to fully develop a record for federal court, or where there is an 'emergency situation' requiring immediate federal court involvement." (Defs' Brief, p. 13.) This statement is correct, but Defendants fail to discuss the statement by our Court of Appeals in *W.B. v. Matula,* 67 F.3d 484 (3d Cir. 1995), abrogated on other grounds by *A.W. v. Jersey City Public Schools*, 486 F.3d 791 (3d Cir. 2007), that "[t[here may be other very narrow exceptions permitting the exhaustion requirement to be waived before filing a §1983 claim, such as where the parents of a deceased child seek damages for a school board's failure to provide IDEA services while the child was still alive. Such exceptions, whether based on futility or

other grounds, would be rare indeed." *Matula*, 67 F.3d at 496; s*ee also Krebs v. New Kensington-Arnold School District,* 2016 WL 6820402 (W.D. Pa., Nov. 27, 2016) (excusing exhaustion as futile given student's passing); *Taylor v. Altoona Area School District,* 737 F.Supp.2d 474, 482 (W.D. Pa. 2010) (excusing exhaustion where a child passed away before exhausting administrative remedies); *Susavage v. Bucks County Schools Intermediate Unit No. 22*, 202 WL 109615, at *19 (E.D. Pa. Jan. 22, 2002) (excusing exhaustion under the IDEA for a deceased child).

The current factual scenario is the exact type of narrow exception to futility contemplated by the Third Circuit in *Matula*. The relief sought by Plaintiffs cannot be obtained through IDEA administrative proceedings, which are meant to correct and remedy educational inadequacies. As David is deceased, there is no equitable educational remedy that would be appropriate in this matter. No revision of an IEP or compensatory education would be sufficient. Accordingly, exhaustion of IDEA administrative remedies would be futile, and is therefore waived, and Defendants' motion to dismiss is denied.

### B.  SECTION 1983 CLAIMS

Count II of Plaintiffs' Amended Complaint contains a claim for violations of David's substantive due process rights protected by the Fourteenth Amendment of the United States Constitution and seeks relief pursuant to 42 U.S.C. § 1983. Count III contains a *Monell* claim by Plaintiffs against the District Defendants, and Count IV is a claim brought by Plaintiffs against the District Defendants for violations of their own constitutional rights under § 1983. Defendants move to dismiss all three of these claims, and for the reasons discussed more fully below, Defendants' motion to dismiss these constitutional claims will be denied.

### 1. Count II (§1983 Against Individual District Defendants)

Count II of the Amended Complaint alleges that the individual district defendants violated David's substantive due process rights protected by the Fourteenth Amendment of the United States Constitution, and seeks relief pursuant to 42 U.S.C. § 1983. Defendants argue that Count II is actually a claim for failure to provide a FAPE under the IDEA, and that *A.W. v. Jersey City Public Schools* states "unequivocally that remedies for the denial of FAPE under the IDEA and Section 504 of the Rehabilitation Act preclude any § 1983 relief based upon denial of FAPE." (Defs' Brief, p. 15.) Therefore, Defendants have moved to dismiss Count II. In response, Plaintiffs argue that Count II of their Amended Complaint does not assert statutory violations under the IDEA and § 504, but rather "deprivations of David's constitutional substantive due process right to life, liberty and bodily integrity," and that *A.W.* only considered the use of §1983 as to violations of IDEA and §504-created statutory rights. (Pls' Brief, p. 13.)

A review of Plaintiffs' Amended Complaint shows that they have not pled statutory violations of the IDEA and § 504 in Count II. Rather, they have pled constitutional violations, alleging, *inter alia*, that the Defendants' "conduct and actions resulted in deprivation of David's substantive due process rights protected by the Fourteenth Amendment." (Am Compl., ¶ 136.) In *Wellman v. Butler Area School District*, the Third Circuit recently held that a court must review "both the entire complaint and each claim to determine if the plaintiff seeks relief for denial of a FAPE." 877 F.3d 125, 133 (3d Cir. 2017). Therefore, I must review Count II and Plaintiffs' Amended Complaint as a whole to determine if Count II is actually seeking relief for

denial of a FAPE, despite pleading constitutional violations, and should therefore be dismissed.

Based upon a review of the allegations of Plaintiffs' Amended Complaint, as well as Count II specifically, I conclude that the Amended Complaint pleads a constitutional claim in Count II, not a statutory claim under the IDEA. Plaintiffs' Amended Complaint does reference David's IEP, his disabilities and his right to a FAPE, but also repeatedly discusses the alleged discrimination against him, the different treatment he received when compared to non-disabled students and Defendants' deliberate indifference to his constitutional rights. Accordingly, I find that the "gravamen" of Count II is not a denial of FAPE, but rather constitutional violations of David's substantive due process rights.

Further, although *A.W.* held that §1983 was not available for violations under the IDEA, the Third Circuit's recent decision in *Williams v. Pennsylvania Human Relations Commission*, 870 F.3d 294 (2017), provides further guidance on Plaintiffs' §1983 claims. In *Williams*, Plaintiff sought damages under § 1983 for alleged violations of Title VII and the ADA. 870 F.3d at 296. The Court held that "plaintiffs may not seek damages under § 1983 for **stand-alone violations** of either Title VII or the ADA." *Id.* at 297 (emphasis added.) In a footnote, the Court continued:

> Given that Williams premised her § 1983 claims solely on violations of Title VII and the ADA, we need not address whether a plaintiff may allege independent **constitutional** violations under § 1983 based on the same underlying facts. At least in the Title VII context, however, there is a strong argument that plaintiffs may advance an employment discrimination claim under § 1983 based on an Equal Protection Clause violation, either concurrently with, or independent of, a Title VII violation.

*Id.* at 300, n. 34 (emphasis in original, citations omitted). Based upon *Williams* and the fact that Count II contains claims of constitutional, not statutory violations under the

11

IDEA, I find that Plaintiffs can pursue a stand-alone claim for independent constitutional violations under § 1983 against the District Defendants as set forth in Count II.

Next, Defendants argue that if Plaintiffs' § 1983 claim is not barred by the existence of *A.W.,* then Plaintiffs have failed to properly plead a state-created danger cause of action. In the state-created danger rule, § 1983 liability exists where "the state acts to create or enhance a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." *Sanford v. Stiles*, 456 F.3d 298, 304 (3d Cir. 2006). In order to prevail on a state-created danger theory, a plaintiff must prove:

1) The harm ultimately caused was foreseeable and direct;

2) A state actor acted with a degree of culpability that shocks the conscience;

3) The plaintiff was a foreseeable victim, or a member of a discrete class of persons subject to the potential harm brought about by the state's actions; and

4) A state actor affirmatively used his or her authority in a way that created a danger to the plaintiff or that rendered the plaintiff more vulnerable to danger than had the state not acted at all.

*Morrow v. Balaski,* 719 F.3d 160, 177 (3d Cir. 2013.) As to the fourth prong of the test, the Third Circuit has held that there "must be a direct causal relationship between the affirmative act of the state and plaintiff's harm. Only then will the affirmative act render the plaintiff 'more vulnerable to danger than had the state not acted at all.'" *Kaucher v. County of Bucks,* 455 F.3d 418, 432 (3d Cir. 2006), *quoting Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006).

As to the first prong, David's death was foreseeable and as a fairly direct result of the school district assigning him to walk to and from school along a dangerous road.

Based upon the facts as pled in the Amended Complaint, the District knew of David's limitations and the needs that arose from his disabilities, and also knew of the dangerousness of East High Street, the road that he had to cross to get to and from school. If the facts as pled are true, certainly the school should have known that requiring a child with autism and other cognitive disabilities to walk to and from school and cross a dangerous road could result in harm to that student. Therefore, I find that the amended complaint pleads sufficient facts to establish that the harm caused to David was foreseeable and fairly direct.

    To meet the second prong, Plaintiffs must establish that the school district acted with a degree of culpability that shocks the conscience. As set forth in the Amended Complaint, Defendants required an autistic seventh grader to walk to and from school, knowing that he had to cross an extremely dangerous street without assistance. If these facts are true, this is certainly enough to shock the conscience. The District was on notice of dangerous conditions on East High Street and knew of numerous accidents that had occurred on the highway, and still assigned David to walk along and cross this road.

    The third prong of the test requires that David be a foreseeable victim of the District's conduct. Based upon David's relationship with the defendants as a student within the District, he was a foreseeable victim.

    Lastly, Plaintiffs must show that the district defendants affirmatively used their authority in a way that created a danger to David or that rendered David more vulnerable to danger than had the district Defendants not acted at all. There is often a difficulty in this situation distinguishing between affirmative acts and omissions. The Third Circuit has stated in this regard that "the dispositive factor appears to be whether the state has in

some way placed the plaintiff in a dangerous position that was foreseeable, and not whether the act was more appropriately characterized as an affirmative act or omission." *Morse v. Lower Merion School District*, 132 F.3d 902, 915 (3d Cir. 1997). In this matter, the District Defendants placed David in a dangerous position by requiring him to walk to and from school along a dangerous road, knowing of his disabilities and the fact that he would have to cross the road in question. I find this was the requisite affirmative act to meet the fourth prong of the test for a state-created danger, and Plaintiffs' have sufficiently pled § 1983 substantive due process violations based on this theory.

Therefore, Defendants' motion to dismiss Count II of the Amended Complaint is denied.

### 2. Count III (§1983 Claim for Custom/Practice and Failure to Train)

Count III of Plaintiffs' Amended Complaint contains a claim against the District Defendants under § 1983 based upon an alleged failure to train employees and a custom and practice that was the "moving force" behind David's death. Defendants' argument for dismissal of this count is the mostly the same argument made with regard to dismissal of Count II. For the reasons set forth above, Plaintiffs' § 1983 custom and practice claims are not barred by *A.W.* Further, as also discussed above, Plaintiffs' Amended Complaint pleads sufficiently "conscience-shocking" conduct by the District Defendants that caused a "foreseeable harm" to David to survive a motion to dismiss. Accordingly, Defendants' motion to dismiss this count is denied. **²**

---

² The District Defendants also moved to dismiss Count IV from Plaintiffs' Amended Complaint, which is a Fourteenth Amendment substantive due process claim for termination of their parental interests. Defendants' argument for dismissal is based upon *Allen v. Susquehanna Tp. School District*, 2006 WL 1071769 (M.D. Pa., Apr. 21, 2006), which found that because there was no valid claim that the rights of the deceased student had been violated under § 1983, there was no valid parental interest claim. As I find that Plaintiffs' Amended Complaint pleads a valid cause of action for violation of David's rights under § 1983, this argument must also fail.

### C. QUALIFIED IMMUNITY

Lastly, the District Defendants argue that there is no liability as to the individual district defendants in this matter based upon the doctrine of qualified immunity. Qualified immunity shields public officials from civil liability so long as their conduct does not violate "clearly established statutory or constitutional rights." *Mullienix v. Luna,* 136 S.Ct. 305 (2015). Public officials are not entitled to qualified immunity if they "violate clearly established constitutional rights of which a reasonable person would have been aware." *L.R. v. School District of Philadelphia*, 836 F.3d 235, 241 (3d Cir. 2016). I have determined above that the Amended Complaint alleged sufficient facts against the individual defendants to state a claim under the state-created danger doctrine. Therefore, the Amended Complaint sets forth a claim for violations of David's substantive due process rights. These rights are clearly established, and a reasonable person would have been aware of them. Accordingly, the individual defendants are not entitled to qualified immunity, and Defendants' motion to dismiss on the basis of qualified immunity is denied.

### IV. MOTION TO DISMISS AMENDED CROSSCLAIM

Defendants filed a Motion to Dismiss co-defendant Roush's Amended Crossclaim against them, arguing that it fails to state a cause of action for contribution and/or indemnification against the District Defendants. Defendants argue that Roush and the District Defendants are not joint tortfeasors under Pennsylvania law. At this stage of the proceedings, the parties' status as joint tortfeasors is unclear. Accordingly, I will deny

this motion without prejudice, and Defendants can re-file as a Motion for Summary

Judgment on the crossclaim at the close of discovery, if warranted.[3]

## V.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiffs' Amended

Complaint and Defendants' Motion to Dismiss Amended Crossclaim will both be denied.

---

[3] Roush answered the Amended Complaint and filed a crossclaim against the District Defendants on May 17, 2017. In response, the District Defendants filed a motion to dismiss the crossclaim on June 2, 2017 (Docket No. 10). On June 13, 2017, Roush filed an answer with amended crossclaim against the District Defendants, effectively mooting the June 2, 2017 motion to dismiss. Accordingly, Defendants' original motion to dismiss the counterclaim is denied as moot.